32 pgs

REC # DET 016093

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DANIEL TAYLOR, an individual

    Plaintiff,

    v.

SHERMETA, ADAMS, & VON ALLMEN, P.C.

    Defendant,

Case:2:10-cv-10302
Judge: Cohn, Avern
MJ: Majzoub, Mona K
Filed: 01-22-2010 At 02:50 PM
CMP Daniel Taylor v Shermeta, Adams
& Von Allmen, P.C. (SMS)

**Poor Quality
Original**

**VERIFIED PETITION, COMPLAINT AND CLAIM IN THE NATURE OF A
PETITION FOR REDRESS OF INJURIES UNDER AUTHORITY OF THE
FAIR DEBT COLLECTIONS PRACTICES ACT, FOR VIOLATIONS
UNDER 15 U.S.C. 1601 ET SEQ AND "RICO".**

Subject matter jurisdictional statement

FEDERAL QUESTION JURISDICTION: 28 U.S.C. § 1331: The federal district

court has subject matter jurisdiction to consider this claims under authority of Fair Debt

Collection Practices and 18 U.S.C. § 1964(a) & (c) and by virtue of factually sufficient

pleadings clearly articulating violations of federal criminal offenses including offenses

occurring at 18 U.S.C. §§ 1961, 1962 & 1341.

## COMPLAINT

Daniel Taylor, in propria persona, and for his Complaint against Shermeta, Adams & Von Allmen, P.C., submits the following:

1.   Daniel Taylor, an aggrieved party, petitions this Court under authority of 15 USC 1601 et seq. hereinafter "the act."

2.   On November, 7 2008, Daniel Taylor received a Dunning Letter  through the mail from Shermeta, Adams & Von Allmen, P.C., dated November 4, 2008, informing Mr. Taylor that he owes a debt and has 30 days to dispute the alleged debt.  **(Exhibit 1)**

3.   On November 8 2008, 2008 Plaintiff, who is unschooled in Law, sent to Shermeta, Adams & Von Allmen, P.C, two Dispute Letters requesting proof of contract and validation, pursuant to the Fair Debt Collection Practices, Certified Mail No.70071490000360233931 **(Exhibit 2)**

4.   Shermeta, Adams & Von Allmen, P.C ceased collection activity upon receipt of Plaintiff's dispute letters.

5.   On September 17, 2009 Plaintiff received through the mail from Shermeta, Adams & Von Allmen, P.C a correspondence dated September 15, 2009, in responds to Plaintiffs' letters sent to Shermeta, on November 8, 2008.  **(Exhibit 3)**

6.   On October 5th, 2009 Shermeta, Adams & Von Allmen, P.C S, filed a summons and complaint in the 41st A district court, Case No. S-09-129796-GC. **(Exhibit 4)**

7.   On November 9, 2009 Plaintiff sent to Shermeta, Adams & Von Allmen, P.C a Notice of Dispute and Request for Validation via certified mail no. 7008 3230 0002 0532 4070 **(Exhibit 5)**

8. **FIRST CAUSE OF ACTION**: Shermeta, Adams & Von Allmen, P.C did not respond within five days after the initial communication with the Plaintiff in connection with the collection of the alleged debt, in violation of 15 USC 1692 (g).

9. Beginning on or about September 15, 2009, Shermeta, Adams & Von Allmen, P.C began a pattern of violating 15 USC 1692(e) by making false and misleading representations in connection with the collection of an alleged debt.

10. **SECOND CAUSE OF ACTION**: Shermeta, Adams & Von Allmen, P.C violated 15 USC 1692(e) by making false and misleading representations in connection with the collection of an alleged debt. Shermeta, Adams & Von Allmen, P.C asked for and demanded a sum of money based on an undocumented and unverified claimed that Daniel Taylor owed "CAPITAL ONE BANK N.A., plus attorney's fees." The demanded sum was different from and greater than what Plaintiff could owe under a lawful theory.

11. **THIRD CAUSE OF ACTION**:  After receiving notice of Mr. Taylor's "Notice of  dispute and request for Validation", Shermeta, Adams & Von Allmen, P.C violated 15 USC 1601 § 807,809.  November 8, 2008, and November 9, 2009 Plaintiff disputed the validity of the debt alleged in Shermeta, Adams & Von Allmen, P.C's collection firm's dunning letter.  Shermeta, Adams & Von Allmen, P.C violated 15 USC 1601 § 809 by continuing collection activity without validation of the alleged debt after Plaintiff disputed and demanded validation of the alleged debt.

12. **FOURTH CAUSE OF ACTION**: Shermeta, Adams & Von Allmen, P.C violated 15 USC 1692(f),(g) by threatening to interfere with the business interests of Plaintiff, where no present right to possession existed as collateral through an enforceable

security interest for reason of Shermeta, Adams & Von Allmen, P.C's failure to show either a signed judgment order or an accounting which is signed and dated by the person responsible for maintaining the account general ledger. See *Spears v. Brennan, Pacific Concrete F.C.U. V. Kauanoe,* 62 Haw. 334, 614 P.2d 936 (1980), *GE Capital Hawaii, Inc. v. Yonenaka* 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001), *Fooks v. Norwich Housing Authority* 28 Conn. L. Rptr. 371, (Conn. Super.2000), and *Town of Brookfield v. Candlewood Shores Estates, Inc.* 513 A.2d 1218, 201 Conn.1 (1986). See also *Solon v. Godbole,* 163 Ill. App. 3d 845, 114 Ill. Dec. 890, 516 N. E.2d 1045 (3Dist. 1987)

13. Shermeta, Adams & Von Allmen, P.C is a debt collector. See 15 USC 1692a(6). See also *George W. Heintz, et al, v Darlene Jenkins,* 514 u.s. 291, 115 S.Ct. 1489 (1995), *Romea v. Heilberger & Associates,* C.A. 2(N.Y.) 1998, 163 F.3d 111, *Wadlington v. Credit Acceptance Corp.,* C.A. (Mich.) 76 F.3d 103, *Fox v. Citicorp Credit Services, Inc.* C.A.9(Ariz) 1994, 15 F.3d 1507, *Scott v. Jones* C.A.(Va.) 1992, 964 F.2d 566, *Crossley v. Lieberman,* C.A.3(Pa.) 1989, 868 F.2d 314, *Ditty v. Checkrite, Ltd. Inc.,* D. Utah 1997, 973 F.Supp. 1320, *Sandlin v. Shapiro & Fishman,* M.D. Fla. 1996, 919 F.Supp.1564, *Newman v. Checkrite California, Inc.* E.D.Cal. 1995, 912 F. Supp. 1354, *Blakemore v. Pdkay,* N.D. Ill.1995, 895 F.Supp. 972, *Shuys v. Hand,* S.D.N.Y. 1993, 831 F.Supp. 321, *Stojanovski v. Strobl and Manoogian, P.C.* E.D. Mich. 1992, 783 F.Supp.319, *Craeace v. Lucas,* D.Conn.1990 775 F.Supp. 502, *Shapiro and Meinhold v. Zatman,* Colo. 1992, 823 P.2d 120, and *Zartman v. Shapiro and Meinhold* Colo. App. 1990, 811 P.2d 409, certiorari granted, affirmed 823 P.2d 120,

14. Capital One Bank, N.A., appears to be substantially "above board" but is tainted by the following practices: (1). Capital One Bank, N.A. makes consumer loans including establishing so-called credit card member agreements. (2). The mechanics of

credit cards and the accompanying abuses related to the business of credit cards, although

the topic of national concern including Congressional inquiry, are irrelevant to this

instant case save where Capital One Bank,N.A. interacts with Shermeta, Adams & Von

Allmen, P.C to perfect the schemes of fraud and extortion via the illicit business of debt

buying. (3). When Capital One Bank, N.A. has credit card accounts that become non-

performing, Capital One Bank: (a). collects insurance on the bad debt, (b). charges off the

bad debt, and (c). secures reimbursement for the insurance premium paid to insure the

credit card risk by selling evidence of debt to Shermeta, Adams & Von Allmen, P.C. (4).

Installment contracts which are a continuing series of offers to contract such as are credit

card member agreements are not negotiable instruments and therefore not amenable to

holder-in-due-course law and cannot be sold for value. Such a sale extinguishes the debt.

(5). Shermeta, Adams & Von Allmen, P.C, then uses the United States mail service and

other forms of interstate communication to harass, intimidate, and compel payment of the

evidence of debt in direct violation of  18 U.S.C. §§ 1961, 1962 & 1341.


15.   **FIFTH CAUSE OF ACTION**:  Shermeta, Adams & Von Allmen, P.C is an

attorney firm racket,  operating in the United States, thru the illicit business of debt

buying, to wit: (1). Capital One  made a consumer's loan on a unilateral installment

contract of adhesion which is the credit card agreements. (2). As the superior party in a

unilateral contract cannot sue for breach of contract, so Capital One then files an

insurance claims for non-performing of the accounts and collect insurance.  Although

Capital One still had an actionable damage in pursuing a theory "on an open account,"

the matter would require: (a). subrogation to the insurer, and (b). proof via authenticated

evidence and testimony of every single transaction to show a deficit; so, banks charge-off and sell evidence of debt to attorneys like Shermeta, Adams & Von Allmen, P.C, who then buys in bulk for a typical six cents on the dollar. (3).  Since installment contracts, such as credit card contracts, are not negotiable instruments and cannot be sold for value under holder-in-due-course theories of law, whatever debt incurred is extinguished along with the contract itself when sold (Novation). (4). Attorneys such as Shermeta, Adams & Von Allmen, P.C, in the illicit business of debt buying then use trickery, deceit, and harassment as a tools to extort sums from persons no longer subject to lawful prosecution or liable for the extinguished debt. This court is noticed: the above scenario is a blatant violation of 18 U.S.C. §§ 1341 & 1962 and  defendant  Shermeta, Adams & Von Allmen, P.C were the purchasers' of debt through the above mentioned procedures.


16. **SIXTH CAUSE OF ACTION RESULT IN VIOLATION OF 18 USC 1961 & 1962**:    October 5th 2009, predicate actor from the attorney firm Shermeta, Adams & Von Allmen, P.C, filed a fraudulent court action in 41st District Court of the county of Macomb, state of Michigan, claiming to be acting on behalf of Capital One due to a breach of Contract.   Shermeta, Adams & Von Allmen, P.C fraudulently claimed that Plaintiff was indebted to Capital One in a sum in excess of $6,344 dollars. Concisely, Shermeta, Adams & Von Allmen, P.C advanced writing which Shermeta, Adams & Von Allmen, P.C knew was false, with the intention that Mr. Taylor rely on the fraud to Mr. Taylor's detriment. Shermeta, Adams & Von Allmen, P.C's fraudulent claim was urged under color of an official right. A jury shall determine that Shermeta, Adams & Von Allmen, P.C absolutely violated 18 USC 1961 & 1962 by the fraud and extortion which occurred.


17. Plaintiff is lawfully entitled to statutory damages against Shermeta, Adams & Von Allmen, P.C, up to a maximum of one thousand dollars ($1,000.00). See 15 USC

1692(a) (k).  In addition to statutory damages, Plaintiff is lawfully entitled to unlimited damages for emotional distress, embarrassment, and humiliation caused by Shermeta, Adams & Von Allmen, P.C as a jury should decide. See 15 USC 1692k (a) (1).

## REMEDY SOUGHT

18. Determination by this court, that Michigan state law, consistent with "the act", affords Plaintiff greater protection and relief than the act justly requires the court's instruction so to the jury.

19. A jury's determination that Shermeta, Adams & Von Allmen, P.C has violated consumer laws which justly requires this court to order Shermeta, Adams & Von Allmen, P.C to compensate Plaintiff for statutory damages not exceeding $1,000.00 plus the costs of bringing this action.  A jury's determination that Shermeta, Adams & Von Allmen, P.C subjected Plaintiff to terrible emotional stress with an unperfected claim that Plaintiff could be compelled to pay over $6,000.00, which justly requires a jury's decision as to whether Shermeta, Adams & Von Allmen, P.C should be compelled to pay Plaintiff $1,000,000.00 (ONE MILLION IN US CURRENCY) as a means to amend Shermeta, Adams & Von Allmen, P.C s' bad behavior, for it is possible to recover full damages under both strategies or double recovery.  An award of statutory damages does not require proof of actual damages, Woolfolk v. Van Ru Credit Corp., D.Conn.1990, 783 F.Supp. 724.  A jury's determination that a Consumer need not produce evidence of actual damages, *Crawford v. Credit Collection Services* D.S.D. 1995, 898 F.Supp.699. Actual damages not capped at $1,000 Smith v. Law Offices of Mitchell N. Kay, D.Del.1991, 124 B.R. 182.   A jury's determination that Shermeta, Adams & Von Allmen, P.C is in violation of 18 U.S.C. §§ 1341 & 1962.  The Federal District Court is empowered to order treble damages as remedial to the racketeering activities of "RICO" enterprises and their constituent members

## JURY TRIAL DEMANDED

I, Daniel Taylor, of lawful age and competent to testify, affirm under penalty of perjury that the factual allegations in the above and foregoing complaint/petition and claim are truthful and accurate to the best of my knowledge.

_Daniel Taylor_

Daniel Taylor

STATE OF MICHIGAN                    INDIVIDUAL ACKNOWLEDGMENT

COUNTY OF WAYNE

Before me, the undersigned, a Notary Public in and for said County and State on this 22 day of Jan, 2010, personally appeared Daniel Taylor to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act.

Given under my hand and seal the day and year last above written.

SHANNON CRUMBLEY
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires Oct. 6, 2014
Acting in the County of Macomb

My commission expires

_Shannon Crumbley_ Notary Public                    SEAL:

8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANIEL TAYLOR, an individual

        Hon:

    Plaintiff,

        Case:

    v.


SHERMETA, ADAMS, & VON ALLMEN, P.C.


    Defendant,


### Affidavit


I, Daniel Taylor, of age and competent to testify, state as follows based on my own
personal knowledge:


1. I was contacted by Shermeta, Adams & Von Allmen, P.C on or about November
   7, 2008.  Shermeta, Adams & Von Allmen, P.C alleged that I owed Capital One
   Bank N. A. a large sum of money, but in the time since, has refused to document
   and validate that I owed Capital One Bank, or Shermeta, Adams & Von Allmen,
   P.C money.

2. On September 15 2009, 10 months after requesting validation, Shermeta, Adams
   & Von Allmen, P.C falsely alleged that Capital One Bank had a claim against me
   and had authority to sue in Michigan courts.


3. September 15, 2009, Shermeta, Adams & Von Allmen, P.C falsely alleged that
   they were the attorney of record for Capital One Bank, and that they would be
   moving on behalf of Capital One bank N.A.

4. September 15 2009, Shermeta, Adams & Von Allmen, P.C falsely alleged that a
   party who had personal knowledge of the business records of  Capital One Bank
   could testify competently about Capital One Bank's records under the penalty of
   perjury.


9

5. As a result of the harassment of Shermeta, Adams & Von Allmen, P.C's repeated attempts to extort money and property from me and because of Shermeta, Adams & Von Allmen, P.C's dissemination of false information about my finances, I have been deprived of business opportunities and been damaged in my business enterprises.

6. There is no way possible I could owe Capital One Bank due to the charge off and collection of insurance money Capital One Bank received in connection with the alleged account.

7. Shermeta, Adams & Von Allmen, P.C violated 15 USC 1692(f) by threatening to interfere with the business interests of Plaintiff, where no present right to possession existed as collateral through an enforceable security interest for reason of Shermeta, Adams & Von Allmen, P.C's failure to show either a signed judgment order or an accounting which is signed and dated by the person responsible for maintaining the account general ledger.

8. Capital One bank N.A. is FDIC insured therefore Plaintiff cannot owe Capital One bank N.A.

*Daniel Taylor*

Daniel Taylor

STATE OF MI                                    INDIVIDUAL ACKNOWLEDGMENT
COUNTY OF Wayne

Before me, the undersigned, a Notary Public in and for said County and State on this 22 day of January, 2010, personally appeared Daniel Taylor to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act under the penalty of perjury.

Given under my hand and seal the day and year last above written.

My commission expires _____

SHANNON CRUMBLEY
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires Oct. 6, 2014
Acting in the County of Macomb

_____ Notary Public

# EXHIBIT - 1

# SHERMETA, ADAMS & VON ALLMEN, P.C.

ATTORNEYS AND COUNSELORS AT LAW
445 South Livernois Road, Suite 333
P.O. Box 5016
Rochester Hills, MI 48308-5016
(248) 652-8200
FAX (248) 652-1292

NOVEMBER 04, 2009

DANIEL A TAYLOR
35639 RAINBOW DR
STERLING HEIGHTS, MI  48312

RE:  OUR CLIENT:  CAPITAL ONE BANK (USA), N.A.

   ACCOUNT NUMBER:  *************7007
   OUR FILE #:  535044/001   CURRENT AMOUNT DUE:  $5,196.03

Dear Sir/Madam:

Please be informed that our above referenced client has requested
that our firm contact you regarding the balance on your past due
account.  Because of interest and other charges that may accrue,
the amount you owe may continue to increase daily. We request that
you contact our office for the purpose of making arrangements for
payment.

We will assume that the above referenced debt is valid, unless you
dispute the validity of this debt, or any portion thereof, within
thirty days after your receipt of this letter.  If you notify us in
writing, within thirty days after your receipt of this letter, that
you dispute this debt, or any portion thereof, we will obtain
verification of this debt and mail a copy of this verification to you
Also, upon written request within thirty days after your receipt of
this letter, we will provide you with the name and address of the
original creditor, if different from the current creditor.

Please direct all questions and correspondence to the attention
of our Recovery Department at 248-652-3278.  If you are out of state
call 1-800-223-5685 or long distance in Michigan call 1-800-451-7992.

Sincerely,

T.P. TODD
K.J. VON ALLMEN                                       D1/535044/001/
T.N. McKINNON                                         TLD

NOTICE:  THIS COMMUNICATION IS FROM A DEBT COLLECTOR ATTEMPTING TO
COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.

# EXHIBIT - 2

From: Daniel A. Taylor
35639 Rainbow Drive
Sterling Heights, MI 48312

November 7,, 2008

To: Shermeta, Adams & Von Allmen, P.C.
Attorneys and Counselors at Law
445 South Livernois Road, Suite 333
P.O. Box 5016
Rochester Hills, MI. 48308-5016

Account No. #535044/001        Capital One Bank Acct # ************7007

To whom it may concern,

I, Daniel A. Taylor, in response to your letter dated November 4, 2008, am in dispute of this account. Capital One Bank has failed to give sufficient information in a timely manner regarding the alleged debt that you are attempting to collect.  In order to attempt to resolve or make an offer of settlement, I am still in need of additional information from you as well as Capital One Bank. Capital One Bank has failed to provide the validation of contract bearing my signature and also failed to respond to the questions via **Sworn Affidavit** that pertain to the alleged debt.  I also require you as well as Capital One Bank to respond to all provisions of the agreement as well as the "repayment terms and a **Creditor Disclosure Statement**. "Please identify and document any losses, injuries or damage incurred by your client.  Also, explain how it is that your client lent me any money or the manner in which the disputed credit account was originated. Your failure to respond in **ten** (10) days is therefore deemed as an admission that you are not able to support your claim of debt against me.  Please be advised that should you initiate a lawsuit against me without having strict proof that I owe you anything at all and that your client incurred a loss because of my actions.  I now have evidence that you are advancing a frivolous lawsuit.

**Furthermore, you have THIRTY (30) days to prove my name (Daniel A. Taylor) is the same as DANIEL A. TAYLOR. Under Title18 USC, Sections 1341 and 1342 any further correspondence will be construed as fictitious name mail fraud and will be turned over to the United States Postal Service Inspector for investigation and possible criminal charges.**

Best regards

*Daniel A. Taylor*

Daniel A. Taylor

**Proof of Service: Via: Certified Mail / Receipt Requested
# 70071490000360233931**

From: Daniel A. Taylor
35639 Rainbow Drive
Sterling Heights, MI. 48312

**November 8, 2008**

To: Shermeta, Adams & Von Allmen, P.C.
Attorneys and Counselors At Law
445 South Livernois Road, Suite 333
P.O. Box 5016
Rochester Hills, MI. 48308-5016

Acct. # **535044/001**            Capital One Bank Acct. # **\*\*\*\*\*\*\*\*\*\*\*7007**

To whom it may concern,

I declare myself competent. I am not a Corporation or a Public Entity. You, Shermeta, Adams & Von Allmen, P.C. must be a Third Party Debt Collector and I do not give you permission to interfere into My Commercial affairs. If you are assuming that you are representing me, you are Hereby Terminated and your Power of Attorney is Hereby Revoked.

As proof of claim, complete the attached '**CREDITOR DISCLOSURE STATEMENT**' and return within 10 days. Failure to respond with the completed 'CREDITOR DISCLOSURE STATEMENT', thereby providing your verified Proof of Claim, signed under the Penalties of Perjury and verified by your affidavit, you, Shermeta, Adams & Von Allmen, P.C are agreeing to your Commercial Dishonor, exhausting My Administrative Remedies. I will accept your Silence as an Acceptance, and your agreement that a Default be entered against you. You will also agree to a Full Tacit Contractual Agreement being a participant in Fraud and to forfeit all remedies under Administrative Law, Judicial Law, and / or MARITIME CLAIM RULES C (6).

You should also be aware that sending unsubstantiated demands for payment through the United States Mail System might constitute mail fraud under federal and state law.

Your failure to satisfy this request within the requirements of the Fair Debt Collection Practices Act will be construed as your absolute waiver of any and all claims against me, and your tacit agreement to compensate me for costs and attorney fees.

Best regards,

*Daniel A. Taylor*

Daniel A. Taylor

# CREDITOR DISCLOSURE STATEMENT

1) Does My signature create the funds to discharge?                               yes / no

_____

2) Name of Creditor:

_____

3) Creditor's address:

_____

4) Name of DEBTOR:                              account number:

_____

5) Debtor's address:

_____

6) Amount of debt purported to be owed:  $ _____     date it became payable: _____

_____

7) Was this debt assigned or purchased from a previous creditor?        yes / no

_____

8) Please state the amount of money paid for the assignment or purchase?        $ _____

_____

9) Please attach a facsimile of the terms of the assignment to this completed form.

_____

10) Have any insurance claims been made by any creditor regarding this account?    yes / no

_____

11)  Have any judgments been obtained by any creditor regarding this account?      yes/ no

_____


_____          _____
authorized signature for creditor                              date


Please return this completed form and attach all assignment or other transfer agreements which would establish your right to collect this debt.  Your claim cannot be considered if any portion of this form is not completed and returned with the required documents.   This is a request for validation made pursuant to the Fair Debt Collection Practices Act.  If you do not respond as required by this law, your claim will not be considered and you may be liable for damages for continued collection efforts.  Please allow thirty days for processing after receipt of your request.

# EXHIBIT - 3

# SHERMETA, ADAMS & VON ALLMEN, P.C.
## Attorneys and Counselors at Law
### Members of the State Bar of Michigan

Douglass H. Shermeta
Barbara L. Adams
Kyle J. Von Allmen*
Tricia N. McKinnon*
Terri P. Todd
Deborah A. Banfill*

445 South Livernois Road, Suite 333
P.O. Box 5016
Rochester Hills, MI 48308-5016
(248) 652-8200
Fax (248) 652-1292

James E. Hess
Biana Hamady
Lisa D. Weiss
Matthew J. Ebach
Sogol I. Dasgeı
** Lisa K. Drouillard

September 15, 2009

Daniel A. Taylor
35639 Rainbow Drive
Sterling Heights, Michigan 48312

RE:     Creditor:              Capital One Bank (USA), N.A.
        Account Number:        XXXXXXXXXXXX7007
        Current Balance:       $6,298.53
        Our File Number:       535044

Dear Mr. Taylor:

My office is in receipt of your letter regarding the above referenced matter. I am one of the attorneys representing Capital One Bank (USA), N.A. in this matter.

Pursuant to the Fair Debt Collection Practices Act (15 U.S.C. 1692g), the enclosed September 18, 2008 monthly billing statement for the credit card agreement, the account terms and conditions agreement, and my client's affidavit are being supplied to verify and validate this debt. My client, Capital One Bank (USA), N.A., 6356 Corley Road, Norcross, GA 30071, is the original creditor.

By providing this information, we consider this debt to have been validated.

If you would like to discuss payment arrangements or settlement of this account, please contact our Recovery Department toll free at 1-800-451-7992.

Sincerely,
SHERMETA, ADAMS & VON ALLMEN, P.C.

Terri P. Todd

TPT/tlu
Enclosures
NOTICE: THIS COMMUNICATION IS FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

* Also Admitted in Ohio                                                    ** Admitted in Ohio only

500013



DANIEL A TAYLOR

## YOU'RE BEHIND BY
# 6
# PAYMENTS

# NOT PAYING YOUR DEBT
# DOESN'T MAKE IT GO AWAY.

In fact, even if we report your account as charged off, you'll still be responsible for paying your debt. So why not call us to see what we can do together to keep you from receiving such a serious mark on your credit record?

**We're here to help. Please contact us to find a solution that's right for you.**

**You can make a payment with our _free_ check by phone service or speak to an associate by calling 1.800.955.6600.**

Make sure you call or pay the amount due on your statement by the due date to eliminate the risk of being charged off.

© 2008 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved.

| Previous Balance | Payments & Credits | FINANCE CHARGE | Transactions | New Balance | Minimum Payment | Due Date |
|---|---|---|---|---|---|---|
| $5,825.82 | $0.00 | $124.67 | $39.00 | $5,989.49 | $1,146.00 | Oct. 13, 2008 |

Aug. 19, 2008 -- Sep. 18, 2008     Page 1 of 1

PLEASE PAY AT LEAST THIS AMOUNT

**MasterCard Platinum Account**
5178-0524-1686-4805

**Your Account Information**

| | |
|---|---|
| TOTAL CREDIT LINE | $5,000.00 |
| TOTAL AVAILABLE CREDIT | $0.00 |
| CREDIT LINE FOR CASH | $5,000.00 |
| AVAILABLE CREDIT FOR CASH | $0.00 |

You're behind by six payments. If we charge off your account due to late or missed payments, finance charges will continue to accrue. Act now to prevent this from happening. Please pay the minimum payment amount on your statement or give us a call at 1.800.955.6600. We're here to help. Take control of your credit with Capital One.

**Payments, Credits & Adjustments**

**Transactions**

| | | | |
|---|---|---|---|
| 1 | 12 SEP | PAST DUE FEE | $39.00 |

Your account has gone over its credit limit. To avoid additional overlimit fees, please pay enough to bring your balance below your credit limit immediately, and make sure you remain below your credit limit. Please be sure to account for any future purchases, fees, and finance charges.

You were assessed a past due fee because your minimum payment was not received by the due date. To avoid this fee in the future, we recommend that you allow at least 7 business days for your minimum payment to reach Capital One.

Your account is now closed. Charges made prior to your request to close will still post to your account, but future charges will be declined. If you have a balance, please continue to make payments until your balance reaches $0. Your account will be reported to the credit bureaus as closed.

**Finance Charges** (Please see reverse for important information)

| | Balance rate applied to | Periodic rate | Corresponding APR | FINANCE CHARGE |
|---|---|---|---|---|
| Purchases | $4,757.17 | 0.06822% D | 24.90% | $100.61 |
| Cash | $1,137.46 | 0.06822% D | 24.90% | $24.06 |

**ANNUAL PERCENTAGE RATE applied this period:   24.90%**

☎ **At Your Service** - Go to www.capitalone.com to manage your account, or Call 1-800-903-3637 to report a lost or stolen card or speak to Customer Relations

✉ **Pay Online** at www.capitalone.com or mail your payment to: Capital One Bank (USA), N.A. • P.O. Box 5294 • Carol Stream, IL 60197-5294

❓ **Send Inquiries to:** Capital One• P.O. Box 30285 • Salt Lake City, UT 84130-0285

$? **Have a question about a charge on your statement?** Please refer to the Billing Rights Summary on the back of your statement or visit www.capitalone.com/disputes

PLEASE RETURN PORTION BELOW WITH PAYMENT OR LOG ON TO WWW.CAPITALONE.COM TO MAKE YOUR PAYMENT ONLINE.

0  517805241686480S  18  598949014900114600Z



| New Balance | Minimum Payment | Due Date |
|---|---|---|
| $5,989.49 | $1,146.00 | Oct. 13, 2008 |

PLEASE PAY AT LEAST THIS AMOUNT

**Amount Enclosed** [ . ]

Account Number: 5178-0524-1686-4805

Please print address or phone number changes below using blue or black ink.

Address _____

Home Phone _____  Alternate Phone _____

E-mail address _____ @ _____

**#9026391727926515# MAIL ID NUMBER**
DANIEL A TAYLOR
35639 RAINBOW DR
STERLING HEIGHTS, MI 48312-4150

Capital One Bank (USA), N.A.
P.O. Box 5294
Carol Stream, IL 60197-5294

Please write your account number on your payment made payable to Capital One Bank (USA), N.A. and mail with this coupon in the enclosed envelope.

your account) at any time during the billing cycle, for any reason, is greater than the applicable temporary or permanent credit limit, (regardless of whether you went over limit as a result of a transaction, finance charge or any other fee or charge, even if approved by us); (iii) a returned check fee will be assessed if we do not honor any account access check for any reason; (iv) copying charges for duplicate copies of transaction documentation or periodic statements will be assessed on a per-page basis, unless required for billing dispute resolution; (v) a returned payment fee will be assessed if, for any reason, (a) a check, draft or similar instrument is not honored or cannot be processed; or (b) an electronic debit is returned unpaid or cannot be processed. You authorize us to resubmit returned payments in our discretion. At our option, we may assess this fee each time your payment is not honored or paid, even if it is later honored or paid following resubmission. Any check, draft or similar instrument may be collected electronically if returned for insufficient or uncollected funds. We may change any of these fees or charges, or add additional fees and charges, as provided below. We reserve the right to waive any of these fees without prior notification to you while maintaining our right to assess these fees going forward.

**Cash Advance Fee.** If cash advances are permitted for your account, a cash advance fee finance charge will be (i) assessed each time you obtain a cash advance or cash equivalent transaction, (ii) added to the cash advance segment of your account and (iii) applied against your available credit limit. The amount of the cash advance fee finance charge will be added to other finance charges shown on your periodic statement for the purpose of calculating the annual percentage rate for that billing period. This may cause the annual percentage rate disclosed for that billing period to be greater than the annual percentage rate disclosed to you.

**Membership Fee.** If applicable, a membership fee will be imposed in your first billing period, unless specifically stated otherwise. If the membership fee is assessed annually, it will be assessed in the billing period in which each anniversary of the opening of your account occurs. If the membership fee is assessed monthly, it will be assessed in each billing period. The fee will be billed to the purchase segment of your account and will be treated as a purchase and applied against your available credit limit. The membership fee will not be refunded, in whole or in part, even if you or we cancel the account.

**Transfer Fee.** A fee will be assessed for each transfer of funds from your account to your Security Account that you request. The fee will be billed to the cash advance segment of your account and will be treated as a cash advance and applied against your available credit limit.

**Foreign Transaction Charge.** For each transaction made in a country other than the U.S., or U.S. Territories, we will assess you a finance charge as previously disclosed to you as part of the TILA Account Disclosures or as we will disclose to you if required by applicable law. The fee will be based on the U.S. dollar amount of the transaction.

**Credit Bureau Information.** You agree that we may obtain information about you from credit reporting agencies or others at any time and use it for the purposes of monitoring your credit performance, managing your account and considering you for new offers and programs.

**Security Interest.** The terms and conditions contained within this paragraph apply only if the application for the account stated that the account will be a secured account. You provided us with certain funds, which have been deposited in the Security Account. To secure payment of the balance of the account and all other amounts owing under the terms of this Agreement and the Security Account Assignment Agreement, you have transferred, assigned, pledged and granted to us a security interest in the Security Account, all funds contained in the Security Account, all proceeds of the foregoing and all proceeds of proceeds. This security interest includes, without limitation, the initial funds that were placed into the Security Account, any additional funds added to the Security Account by any person and any interest earned to or accrued on the Security Account. The terms of the security interest are set forth in the Security Account Assignment Agreement you executed. If (i) you default or fail to abide by any of the terms of this Agreement or the Security Account Assignment Agreement, (ii) you close your account or (iii) we cancel your account for any reason, we may then or thereafter, and without prior notice to you, exercise our security interest by deducting from your Security Account the balance due on your account and all other amounts owing under the terms of this Agreement and the Security Account Assignment Agreement. We may exercise this right to make such deductions from your Security Account periodically as we determine to be appropriate. Within sixty days after the date your account is closed, we will send all remaining funds in the Security Account to the person legally entitled to receive them.

**Future Offers.** The terms of any future offer relating to the account will be disclosed to you at the time the offer is made. If you accept an offer, the terms will become effective immediately unless otherwise specified in the offer.

**Default.** We may, in our sole discretion, declare a default under this Agreement if: (a) we do not receive the full amount of any minimum payment on or before the date it is due, (b) you exceed any credit limit or (c) any loan or lease payment on your account is not honored or cannot be processed, or an electronic debit to make payment on your account is returned unpaid or cannot be processed. To the extent permitted by applicable law, we may also, in our sole discretion, declare a default under this Agreement if: (1) you violate any of the other terms of this Agreement or Security Account Assignment Agreement (if applicable), (2) we have declared you to be in default under the terms of any other agreement with us or any of our affiliates, or (3) we determine that you made any false or misleading statements on your application for, or regarding the use of, the account, or otherwise attempted to defraud us, (4) bankruptcy or other insolvency proceedings are instituted by you or against you or (5) you die or are declared legally incompetent or incapacitated. At any time following any default under this Agreement (or after we give you any notice or right to cure the default, if required by applicable law), you will be subject to paying interest, finance charges and other fees pursuant to the terms of this Agreement, including any applicable default rate, even after any judgment is obtained. Additionally, we may, at our sole option, (x) limit or not allow you to make any new purchases or cash transactions on your account(s), (y) increase your minimum payment with such notice as may be required by applicable law or (z) subject to the limitations of applicable law, close your account(s) and demand immediate payment of the entire outstanding balance plus all other amounts owing under the terms of this Agreement and the Security Account Assignment Agreement.
To the extent permitted by applicable law, you agree to pay us all of our actual court costs, collection expenses and attorney's fees (whether paid to an attorney who is one of our employees or an attorney who is not one of our employees) incurred by us in the collection of any amount you owe us under this Agreement. You also agree to pay us all of our actual costs that we incur in retrieving your cards, including any costs we may incur by having your account placed on a restricted list. Nothing in this paragraph shall be construed to waive or impede our right to require arbitration in accordance with the Arbitration Provision below.

**Account Closure and Suspension of Credit Privileges.** (1) We may, at any time, with or without cause, with or without advance notice, and regardless of the existence or non-existence of a default under this Agreement, cancel the account and/or temporarily or permanently suspend your credit privileges under this Agreement. If we cancel the account, you agree to immediately destroy all cards and unused account access checks. (2) Your obligation to make payments and your other obligations under this Agreement will continue in full force and effect after the account is cancelled or your credit privileges are temporarily or permanently suspended. Cancellation of the account and/or temporary or permanent suspension of your credit privileges will not affect our security interest in your Security Account (if applicable) or our rights under the Security Account Assignment Agreement (if applicable). You can close your account by calling our Customer Relations department with the number found on the back of your credit card or, if different, the number stated in your periodic statement and requesting an account closure. You agree to destroy all cards and unused account access checks, cancel all preauthorized billing

arrangements and cease using your card and account. If you do not cancel all preauthorized billing arrangements, you will we consider our receipt of a preauthorized debit to your account to constitute your authorization to reopen the account on the terms set forth in this Agreement and the Security Account Assignment Agreement (if applicable). Your account will not be closed until you pay all amounts you owe us under this Agreement and the Security Account Assignment Agreement (if applicable) including, without limitation, any purchase and cash advance transactions you have authorized, finance charges, late payment fees, over limit fees, returned check fees, returned payment fees, membership fees, cash advance fees, transfer fees, copying charges and any other fees charged to your account. You are responsible for these amounts whether they have been incurred at the time you request a closure of the account or they are incurred subsequent to your request to close the account. This may result in charges appearing on your account after you have requested the account to be closed and, if the account has already been closed, the account will be reopened on the terms set forth in this Agreement and the Security Account Assignment Agreement (if applicable). For example, if you authorize a purchase from a merchant and we receive the charge from the merchant after your account has been closed, your account will be reopened, the amount of the charge will be added to your account and you will be responsible for payment under the terms of this Agreement and the Security Account Assignment Agreement (if applicable). The membership fee for your account will continue to be charged, to the extent permitted by applicable law, until the entire account balance has been paid in full, as described above. If the account is reopened, a new membership fee will be charged to the account as stated above.
If you, acting as the primary cardholder, want to terminate a joint accountholder's or an authorized user's access to the account, you must call our Customer Relations department and request that termination. Immediately thereafter, you agree to destroy that person's card(s) and destroy any unused account access checks in that person's possession. There may be a delay in the effective date of the termination of that person's access to the account. The account will be charged, and you and any joint accountholders will be responsible, for any charges through the use of the card or the account by the joint accountholder or authorized user that occur prior to the effective date of the termination even if the charges do not appear on the account until a later time. If you are unable to destroy the joint accountholder's or authorized user's card(s) or to destroy the unused account access checks in that person's possession, and you call our Customer Relations department to close your account, your account will be closed in accordance with the preceding paragraph. Either you and/or the joint cardholder, if any, may apply for a new account.

**Changes in Terms.** We may add to, remove, amend or change any part or provision of this Agreement, including the annual percentage rate(s) and any charges, (including adding new provisions of the same or a different nature as the existing provisions in this Agreement) at any time. If we do so, we will give you notice of such amendment or change if required by Federal law or Virginia law (to the extent not preempted by Federal law) unless we had previously notified the customer that the account would be subject to such amendment or change without notice. Notice will be mailed to the last billing address indicated in our records for the account. However, no notice will be mailed if we previously had notified you that your account would be subject to such amendment or change without notice. Changes to the annual percentage rate(s) will apply to your existing account balance from the effective date of the change, whether or not the account balance includes transactions billed to the account before the change date and whether or not you continue to use the account. Changes to fees and other charges will apply to your account from the effective date of the change.

**Governing Law.** WE MAKE THE DECISION TO GRANT CREDIT, OPEN AN ACCOUNT AND ISSUE YOU A CREDIT CARD FROM OUR OFFICES IN VIRGINIA. This Agreement is to be construed in accordance with and governed by the laws of the United States of America and by the internal laws of the Commonwealth of Virginia without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the laws of the United States of America or the internal laws of the Commonwealth of Virginia to the rights and duties of the parties. This Agreement is made in Virginia. It will be governed only by Federal law and Virginia law (to the extent not preempted by Federal law). If a court decides not to enforce a part of this Agreement, this Agreement will then read as if the unenforceable or invalid part were not there, but the remaining parts will remain in effect.

**Waivers.** You waive the right to receive notice of any waiver or delay or presentment, demand, protest or dishonor and any right you may have to require us to proceed against another party before proceeding against you. You also waive, to the extent permitted by applicable law, any statute of limitations defense for an additional period of time equal to the applicable limitations period.

**Lost or Stolen Cards or Account Access Checks.** If your card(s) or account access checks are lost or stolen or if someone else may be using them without your permission, notify us at once by calling the telephone number on the back of your credit card or, if different, the telephone number shown on the front of your periodic statements, or by writing us at Capital One, P.O. Box 85015, Richmond, VA 23285-5015. You will not be liable in any amount for unauthorized use of your cards or account access checks.
You agree to tell us at once if you change your name, address, telephone number or employment. You agree to give us written notice of any change in your billing address at least 10 days before the change. Changes may be written in the space provided on the remittance coupon portion of your periodic statement or may be sent to the following address: Capital One, P.O. Box 85015, Richmond, VA 23285-5015. If your account is a joint account or if more than one person is permitted to use it, you agree that all notices regarding the account may be sent solely to the address shown on our billing records.

**Communications.** We may release information to others regarding the status or history of your account as set forth in the Capital One Privacy Notice, a copy of which has been provided to you. We may make inquiries of third parties in connection with maintaining and collecting your account, and you authorize such third parties to release information about you to us. We or our representatives may contact you from time to time regarding the account, or to ask for additional information about you or your experience with Capital One. You agree that such contacts are not unsolicited, are not limited except as expressly required by applicable law and may result from contact information you have provided or that is obtained from other sources. For example, we may contact you at your home or place of employment, during weekends or holidays, on your mobile telephone, voicemail or answering machine, and by email, fax, recorded message, text message or personal visit. Except as restricted by applicable law, we may monitor or record any calls we make or receive, suppress caller identification services and use an automated dialing and announcing device.

ARBITRATION. PLEASE SEE ENCLOSED "ARBITRATION PROVISION." PLEASE NOTE THAT THE TERMS INCLUDED IN THE ARBITRATION PROVISION ARE PART OF YOUR CUSTOMER AGREEMENT.

© 2005 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved.

**CUSTOMER AGREEMENT**

**Welcome to Capital One.®** We are pleased to have your credit card account. This Customer Agreement contains information about your account. Please read it and keep it for your records. Your contract with us for the card and account ("the Agreement") consists of the Customer Agreement, together with any changes to this Customer Agreement that we make as provided below, the Security Account (if applicable), the Security Account Assignment Agreement (if applicable), Capital One Privacy Notice, any account disclosures provided and delivered to you prior to or at the time your account opened, including disclosures pursuant to requirements of Truth in Lending Act (hereinafter "TILA Account Disclosures"), as well as any subsequent notices of changes to these documents, and any and all documents that include your signature (including any electronic or digital signature) on any application, sales slip or other evidence of indebtedness on your account. In this Agreement the words "you," "your" and "yours" refer to each person who signed the application for the account (each, a "joint accountholder") and to anyone else who is authorized to use the account in any way (each, an "Authorized User"). Except as specifically stated herein, each of you is individually and jointly obligated under this Agreement. The words "we," "us" and "our" mean Capital One Bank and its successors, assigns, agents and/or authorized representatives. If the application for the account stated that the account will be a "Security Account," this means the funds you have pledged to us to secure your account. This Agreement and the Security Account Assignment Agreement (if applicable) do not apply to any other Capital One Bank account that you may have, either now or in the future, except as provided in the Arbitration Provision below. Unless you have entered into a Security Account Assignment Agreement with us, the account is unsecured. Except as provided in the Security Account Assignment Agreement (if applicable), the account is not secured by any other property, regardless of the terms of any other contract to which you and we are subject. We can delay enforcing any of our rights under this Agreement without losing them. The card is and remains our property, and you will surrender it to us at any time upon request.

**Assignment.** We may transfer your account, the Security Account (if applicable), the Security Account Assignment Agreement (if applicable) and/or our rights under this Agreement to an assignee. The assignee will take our place under this Agreement, the Security Account (if applicable) and the Security Account Assignment Agreement (if applicable) with respect to the agreements and interests transferred. The assignee may or may not be an affiliate of Capital One Bank. You must pay the assignee and otherwise perform all of your obligations under these agreements. You may not transfer your account or your rights under this Agreement, the Security Account (if applicable) or the Security Account Assignment Agreement (if applicable) to any person or entity without our express prior written consent. Subject to the preceding sentence, this Agreement will be binding and inure to the benefit of your and our respective successors, assigns and representatives.

**Using Your Account.** You can make purchases and obtain cash advances (if cash advances are an option for your account) by using your card, account number and any account access checks (including Purchase Checks, Convenience Checks, Special Transfer Checks and other similar checks) that we may send to you. Additionally, you may request a stop payment on account access checks, but we reserve the right to charge you a fee for such services. When we provide you with account access checks, we will tell you whether they will be treated as purchases, cash advances or special transfers. Unless we tell you otherwise, Convenience Checks will always be treated as cash advances. We may establish different segments for your account, such as a purchase segment, a cash advance segment and a special transfers segment. Each segment may be subject to terms and conditions that are different than those that are applicable to other segments.

Our liability, if any, for any wrongful dishonor of an account access check is limited to your actual damages and shall not include any consequential damages, and in no event will it exceed the amount of the check.

You agree not to use the card or account in connection with any Internet or illegal gambling transactions, but any Internet or illegal gambling transactions in which you engage with the card or account nevertheless will be subject to this Agreement and the Security Account Assignment Agreement (if applicable).

Your card and account may only be used for valid and lawful purposes. If you use, or authorize someone else to use, the card or account for any unlawful or impermissible purpose, you will be responsible for such use and may be required to reimburse us and MasterCard International Incorporated "MasterCard" or Visa USA, Inc. "Visa," as applicable, or their successors for all amounts or expenses that we or they pay as a result of such unlawful or impermissible use. In any event, any unlawful or impermissible transactions in which you engage with the card or account nevertheless will be subject to this Agreement and the Security Account Assignment Agreement (if applicable). You agree that we are not responsible if anyone refuses to honor your card or account.

If you had a prior credit card or other account with us, or such an account or balance of such an account was transferred to us or one of our affiliates, and you agreed to reinstate the balance of the prior account in the form of your new account, the new account will accrue finance charges from the date that the new account is opened.

Authorized users are not financially responsible for the account. An authorized user may use a credit card, can request certain account information and can request to be removed from the account. Subject to our discretion, an authorized user may not be able to initiate certain actions on the account. You agree to provide us with information identifying any persons you authorize to use your account, including their name, address, date of birth and other identifying information we may request.

**Exchange Rate.** If you make a transaction in currency other than U.S. dollars, VISA International or MasterCard International will convert the charge or credit into a U.S. dollar amount in accordance with their operating regulations or conversion procedures in effect at the time the transaction is processed. VISA International's regulations and procedures provide that effective April 2, 2005, the exchange rate between the transaction currency and the billing currency used for processing international transactions is either (1) a rate selected by VISA from the range of acceptable rates in wholesale currency markets for the applicable central processing date, which rate may vary from the rate VISA itself receives or (2) the government mandated rate in effect for the applicable central processing date. MasterCard International's regulations and procedures provide the currency conversion rate it uses is either (1) a wholesale market rate or (2) a government mandated rate in effect on the day of the central processing date.

**Cash Equivalent Transactions.** If cash advances are an option for your account, you can use your account to purchase certain items that we regard as "cash equivalent transactions." All cash equivalent transactions will be treated as cash advances and will be billed to the cash advance segment of your account. Cash equivalent transactions include, without limitation, the purchase of wire transfer money orders, bets, lottery tickets, casino gaming chips and other similar products or services. Nothing in this paragraph will be interpreted to validate any transaction that is unlawful or impermissible.

**Your Credit Limit.** Your initial credit limit will be disclosed when your account is opened (or activated). Either initially, or at any later time, we may establish different credit limits that apply to different segments of your account (such as purchases, cash advances and special transfers). Your current credit limits will be identified in your periodic statements. You agree not to allow the balance of your account (including all transactions, finance charges and other fees or charges), or the balance of the applicable segments of your account, to exceed the applicable credit limits. If you have been given the option to increase your credit limit by adding funds to your Security Account (if applicable), we reserve the right not to increase your credit limit if the additional funds are provided while your account is in default. We may increase or decrease your credit limits at any time without prior notice to you, may temporarily increase or decrease your credit limits at any time without prior notice to you, may limit the credit limit for cash advances or may take away your ability to obtain cash advances. We may honor transactions in excess of your credit limit, even if those transactions result in an over limit fee, and those transactions and fees will be subject to this Agreement and the Security Account Assignment Agreement (if applicable). Any transactions honored in excess of your credit limit will not result in an increase of your credit limit unless we expressly notify you otherwise.

**Additional Benefits and Services.** From time to time, we may offer you benefits and services with your account. These benefits and services may be provided by us or third parties. Unless expressly made a part of this Agreement, and except as provided in the Arbitration Provision below, any such benefits and services are not a part of this Agreement, and are subject only to the terms and conditions outlined in the benefits or services brochure and other official documents provided to you with respect to the benefits and services. We may adjust, add, or delete benefits or services at any time in accordance with the brochures or documents you receive. In addition, any such benefits or services offered to you in the most current version of the "Guide to Benefits" shall replace and supersede the benefits and services that had been offered to you in all previous versions of the "Guide to Benefits," without further notice. Except as provided by applicable law, we are not liable for benefits or services provided by third parties or the actions or omissions of those third parties.

**Making Payments.** You promise to pay us and are liable for all amounts due resulting from the authorized use of your card or account, including any finance charges and other charges due under the terms of this Agreement. Payments must be made in U.S. dollars. Payments made by a check, money order or other negotiable instrument (an "item") must be in a form acceptable to us and be drawn on a U.S. financial institution. We may allocate payments and other credits and proceeds among the various segments of your account, and to charges and principal due within each segment, in any way we determine, including balances (including new transactions) with lower annual percentage rates (APRs) before balances with higher APRs.

Payments you mail to us at the address for payment stated on your periodic statement will be credited to your account as of the business day we receive it, provided (1) you send the remittance coupon portion of your periodic statement and your check in the remittance envelope provided and (2) your payment is received in our processing center by the time indicated on your periodic statement. Please allow at least five (5) business days for postal delivery. Payments received by us at any other location or in any other form may not be credited as of the day we receive them. Our business days are Monday – Saturday, excluding holidays. Credit availability may be delayed in our sole discretion to ensure payment in good funds. If we accept a payment at some other place, we may delay the crediting of the payment for up to five (5) days. This may cause you to incur late payment fees and additional finance charges, and may result in your account being declared to be in default.

Any minimum payment that is due will be stated in your periodic statement. You must pay at least the minimum payment due by the date stated in your periodic statement to avoid a late payment fee. However, you may pay more than the minimum payment or pay the balance in full. In any case, finance charges will continue to be assessed during billing periods that you carry a balance regardless of whether or not your statement shows a minimum payment due.

We can accept late payments or partial payments, or items marked "payment in full" or other similar language, or payments with a request to apply the payment in a particular manner, without losing any of our rights under this Agreement, including our right to receive payment in full. No payment shall operate as an accord and satisfaction without our prior written approval. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to Capital One, P.O. Box 85010, Richmond, VA 23285-5010. You will not make payments from funds obtained from the account or any other credit account with us. If your payment is made to any other address, we may accept the payment without losing any of our rights.

When you send us check(s) to make payment on your account, you authorize us to make a one-time electronic transfer from your bank account for the amount of the check as indicated by numerical digits. This authorization applies to all check(s) received by us during the billing period even if sent by someone else, who you agree is your agent and was provided with these disclosures in advance. This authorization is not restricted by the date on the check and includes resubmissions. We will not be bound by any restrictive legend or condition appearing on the face or reverse side of the check. If we cannot process the electronic transfer, you authorize us to make a charge against your bank account by processing the check, substitute check, draft or similar instrument.

We may adjust your account as appropriate to correct errors, returned checks, rejected debits and similar matters.

We may, in our sole discretion, offer an expedited payment service. You are not required to use this service. When you authorize us to process a demand draft, electronic ACH debit or other expedited payment method for your account, we may charge you an expedited payment fee in an amount disclosed to you at the time of the service. We are not responsible for any dishonor of the payment by your depository institution and may retain the fee in the event of such dishonor.

If you give your account number or other account information to another person to make a payment for you or to act on your behalf, you agree that we may discuss your account with that person and process the payment as if it were made by you. You further agree that you will be responsible for all consequences of payment or non-payment by such party, including expedited payment, return payment, late payment and over limit fees. We reserve the right to refuse to accept payment on your behalf or to permit another person to act on your behalf.

**Periodic Statement.** Each month that you have a credit or debit balance of more than $1 in your account, we will send you a periodic statement as and when required by applicable law. The periodic statement will show all transactions billed to your account during the billing period. The billing period is the time from one statement closing date through and including the next statement closing date. The statement closing date determines the month of a specific billing period. For example, your January billing period is the billing period with the statement closing date in January.

**Finance Charge.** You will be assessed finance charges as previously disclosed to you as part of the TILA Account Disclosures or as we will disclose to you if required by applicable law.

**Temporary Reduction in Finance Charge.** We reserve the right to not assess any or all finance charges for any given billing period without waiving the right to assess such finance charges in a future billing period.

**Other Fees and Charges.** The following fees will be billed to the purchase segment of your account and will be treated as a purchase and applied against your available credit limit, unless otherwise specified, in every billing period in which they apply: (i) A late payment fee will be assessed if we do not receive your payment in time for it to be credited, as provided in this Agreement, by the date stated in your periodic statement; (ii) an over limit fee will be assessed if the balance of your account (or any segment of)

001
18

**1. How to Avoid a Finance Charge.**

a. **Grace Period.** You will have a minimum grace period of 25 days without finance charge on new purchases, new balance transfers, new special purchases and new other charges if you pay your total "New Balance," in accordance with the Important Notice for payments below, and in time for it to be credited by your payment due date. There is no grace period on cash advances and special transfers. In addition, there is no grace period on any transaction if you do not pay the total "New Balance."

b. **Accruing Finance Charge.** Transactions which are not subject to a grace period are assessed finance charge 1) from the date of the transaction or 2) from the date the transaction is processed to your Account or 3) from the first calendar day of the current billing period. Additionally, if you did not pay the "New Balance" from the previous billing period in full, finance charges continue to accrue to your unpaid balance until the unpaid balance is paid in full. This means that you may still owe finance charges, even if you pay the entire New Balance indicated on the front of your statement by the payment due date, but did not do so for the previous month. Unpaid finance charges are added to the applicable segment of your Account.

c. **Minimum Finance Charge.** For each billing period that your account is subject to a finance charge, a minimum total FINANCE CHARGE of $0.50 will be imposed.

d. **Temporary Reduction in Finance Charges.** We reserve the right to not assess any or all finance charges for any given billing period.

**2. Average Daily Balance (Including New Purchases).** Finance charge is calculated by multiplying the daily balance of each segment of your account (e.g., cash advance, purchase, special transfer, and special purchase) by the corresponding daily periodic rate(s) that has been previously disclosed to you. At the end of each day during the billing period, we apply the daily periodic rate for each segment of your account to the daily balance of each segment. Then at the end of the billing period, we add up the results of these daily calculations to arrive at your periodic finance charge for each segment. We add up the results from each segment to arrive at the total periodic finance charge for your account. To get the daily balance for each segment of your account, we take the beginning balance for each segment and add any new transactions and any periodic finance charge calculated on the previous day's balance for that segment. We then subtract any payments or credits posted as of that day that are allocated to that segment. This gives us the separate daily balance for each segment of your account. However, if you paid the New Balance shown on your previous statement in full (or if your new balance was zero or a credit amount), new transactions, which post to your purchase or special purchase segments are not added to the daily balances. We calculate the average daily balance by adding all the daily balances together and dividing the sum by the number of the days in the current billing cycle. To calculate your total finance charge, multiply your average daily balance by the daily periodic rate and by the number of days in the billing period. Due to rounding on a daily basis or due to minimum finance charge assessment, there may be a variance between this calculation and the amount of finance charge actually assessed.

**3. Annual Percentage Rates (APR).**

a. The term "Annual Percentage Rate" may appear as "APR" on the front of this statement.

b. If the code P (Quarterly Prime), L (Quarterly LIBOR), C (Quarterly CD), or S (Bankcard Prime) appears on the front of this statement next to the periodic rate(s), the periodic rates and corresponding ANNUAL PERCENTAGE RATES may vary quarterly and may increase or decrease based on the stated indices, as found in The Wall Street Journal, plus the margin previously disclosed to you. These changes will be effective on the first day of your billing period covered by your periodic statement ending in the months of January, April, July and October.

c. If the code D (Monthly Prime), F (Monthly LIBOR), or G (Treasury LIBOR) appears on the front of your statement next to the periodic rate(s), the periodic rates and corresponding ANNUAL PERCENTAGE RATES may vary monthly and may increase or decrease based on the stated indices, as found in The Wall Street Journal, plus the margin previously disclosed to you. These changes will be effective on the first day of your billing period each month.

**4. Assessment of Late, Overlimit and Returned Payment Fees.** Under the terms of your customer agreement, we reserve the right to waive or not to assess any fees without prior notification to you without waiving our right to assess the same or similar fees at a later time.

**5. Membership Fee and Renewing Your Account.** If a membership fee appears on this statement, we will credit the fee if you request to close your account within 30 days of the mailing of this statement. You may continue to use the account during the 30 day period before your request. If you do not pay all charges owed on this account with in 90 days, or if you use your credit card or account after you request to close, any membership fee previously waived may be reinstated to your account.

**6. Closing or Suspending Your Account.** You may request that your account be closed by calling or writing our Customer Relations Department. At the time of your request, we will provide you with additional details on closing your account. This may include payment information. If you use your credit card or charges post to your account after you ask us to close your account, we can keep your account open or reopen it. We may close or suspend your account and your right to obtain credit. We may do this at any time and for any reason, even if you are not in default. A suspension of your account can be permanent or temporary. If your account is closed or suspended, you must stop using your credit card and account. You must also cancel all preauthorized billing arrangements to the account. We will not do this for you. If we close or permanently suspend your account, you must also destroy all credit cards and account access checks. You must still pay all amounts you owe us on the account, even if they were charged after your account is closed or suspended.

**7. Making Payments.** Payments you mail to us will be credited to your account as of the business day we receive it, provided (1) you send the bottom portion of this statement and your check in the enclosed remittance envelope and (2) your payment is received in our processing center by 3pm ET (12 noon PT). Please allow at least five (5) business days for postal delivery. Payments received by us at any other location or in any other form may not be credited as of the day we receive them. Our business days are Monday through Saturday, excluding holidays.

**8. Notice About Electronic Check Conversion.** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your deposit account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your deposit account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. Your authorization is not limited by the date on the check. We may resubmit and electronically collect returned payments.

**9. Bankruptcy.** If you are entitled to bankruptcy protections for your account, this communication is only for informational purposes. It is not an attempt to collect, assess or recover a debt or claim. Do not send any payments directly to us without speaking with your bankruptcy attorney or the Bankruptcy Court. If you want to contact us about your account or your bankruptcy proceeding, please have your attorney contact us.

**†BILLING RIGHTS SUMMARY**
(In Case of Errors or Questions about Your Bill)
If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet as soon as possible at the address for Inquiries shown on the front of this statement. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can call our Customer Relations number or notify us by email or website, but doing so will not preserve your rights. In your letter, give us the following information: your name and account number, the dollar amount of the suspected error, a description of the error and an explanation, if possible, of why you believe there is an error, or if you need more information, a description of the item you are unsure about. You do not have to pay any amount in question while we are investigating it, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

**† Special Rule for Credit Card Purchases**
If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. You have this protection only when the purchase price was more than $50.00 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant, or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.) Please remember to sign all correspondence.

**† Does not apply to business accounts**

Capital One supports information privacy protection: see our website at www.capitalone.com
Capital One is a federally registered service mark of Capital One Financial Corporation. All rights reserved. © 2008 Capital One

TC-04
01DM6056 - 1 - 03/26/08

**Important Notice:** Payments you mail to us will be credited to your account as of the business day we receive it, provided (1) you send the bottom portion of this statement and your check in the enclosed remittance envelope and (2) your payment is received in our processing center by 3 p.m. ET (12 noon PT). Please allow at least five (5) business days for postal delivery. Payments received by us at any other location or in any other form may not be credited as of the day we receive them. Our business days are Monday through Saturday, excluding holidays. Please do not use staples, paper clips, etc. when preparing your payment.

## ARBITRATION AGREEMENT

**IMPORTANT: THIS ARBITRATION PROVISION IS A PART OF YOUR CUSTOMER AGREEMENT**

You and we agree that either you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration.

IF YOU OR WE ELECT ARBITRATION OF A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR BEFORE A JUDGE OR JURY OR TO PARTICIPATE IN A CLASS ACTION OR ANY OTHER COLLECTIVE OR REPRESENTATIVE PROCEEDING. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, INCLUDING THE RIGHT TO CONDUCT DISCOVERY OR TO APPEAL, MAY BE LIMITED OR UNAVAILABLE IN ARBITRATION. THE FEES ASSOCIATED WITH ARBITRATION MAY BE HIGHER THAN THE FEES ASSOCIATED WITH COURT PROCEEDINGS.

**Special Definitions** for this Arbitration Provision. For the purposes of this arbitration provision ("Arbitration Provision"), the following definition shall apply in addition to the definitions set forth in your Customer Agreement ("Agreement"):

"Claim" means any claim, controversy or dispute of any kind or nature between you and us.

a. This definition includes, without limitation, any Claim that in any way arises from or relates to:
- the Agreement and any of its terms (including any prior agreements between you and us or between you and any other entity from which we acquired your account)
- this Arbitration Provision (including whether any Claim is subject to arbitration)
- the establishment, operation or termination of your account
- any disclosures, advertisements, promotions or other communications relating to your account, whether they occurred before or after your account was opened
- any transactions or attempted transactions involving your account
- any billing or collections matters relating to your account
- any posting of transactions (including payments or credits) to your account
- any goods or services charged to your account
- any fees, interest or other charges assessed to your account, or their calculation
- any products, services or benefits programs related to or offered in connection with your account (including any insurance, debt cancellation or extended service contracts and any programs, rebates, rewards, sweepstakes, memberships, discounts or coupons) whether or not we offered, introduced, sold or provided them
- our receipt, use or disclosure of any information about you or your account
- any other matters relating to your account or your relationship with us.

b. This definition also includes, without limitation, any Claim
- regardless of how or when it is brought (for example, as a initial claim, counterclaim, cross-claim, interpleading or third-party claim)
- based on any theory of relief or damages (including money damages and any form of specific performance or injunctive, declaratory or other equitable relief)
- based on any theory of law or equity (including contract, tort, fraud, constitution, statute, regulation, ordinance or wrongful acts or omissions of any type, whether negligent, reckless or intentional)
- made by your or by anyone connected with you or claiming through or for you (including a co-applicant or authorized user of your account, your agent, your representative, your heirs or a trustee in bankruptcy)
- for which we may be directly or indirectly liable under any theory, including respondeat superior or agency (even if we are not properly named at the time the Claim is made)
- now in existence or that may arise in the future, regardless of when the facts and circumstances that give rise to the Claim occurred or when the Claim accrued
- made as part of a class action, private attorney general action, other representative or collective action which Claim shall proceed on an individual basis as set forth more fully in this Arbitration Provision.

**Arbitration Administrators.** One of the following arbitration administrators ("Administrator" or, collectively, "Administrators") will administer the arbitration:

**JAMS**
1920 Main St., Ste. 300
Irvine, CA 92614
www.jamsadr.com

**American Arbitration Ass'n**
335 Madison Ave., Floor 10
New York, NY 10017-4605
www.adr.org

**National Arbitration Forum**
P.O. Box 50191
Minneapolis, MN 55405
www.arbitration-forum.com

You may contact any of the Administrators to obtain information about arbitration, arbitration rules and procedures, fee schedules and claim forms.

**Election and Initiation of Arbitration.** You or we may elect arbitration under this Arbitration Provision with respect to any Claim, even if the Claim is part of a lawsuit brought in court. You or we may make a motion or request in court to compel arbitration of any Claim brought as part of any lawsuit. We will not elect or initiate arbitration of any Claim brought in a small claims court (or the equivalent), so long as the Claim remains in that court, is made solely on behalf of an individual or joint account holder and is not made as part of a class action, private attorney general action or other representative or collective action. You and we must follow the rules of the Administrators to initiate arbitration. If you initiate arbitration, you may choose one of the Administrators, and you must mail us any notice required by the Administrator to P.O. Box 85550, Richmond, VA 23285-5550. If we initiate arbitration, we will choose one of the Administrators, and we will mail you any notice required by the Administrator to your last-known billing address. If we have initiated arbitration, we will change the Administrator if your request if you notify us in writing at the above address within fifteen days of the date of any notice we send you of our initiation of arbitration.

**Procedures and Law Applicable in Arbitration.** This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the Federal Arbitration Act (the "FAA"). Questions about whether any Claim is subject to arbitration shall be resolved by interpreting this Arbitration Provision in the broadest way it may be enforced, consistent with the FAA and the terms of this Arbitration Provision. The arbitrator will apply substantive law consistent with the FAA and applicable statutes of limitations, but the ruling and enforcement of any class action waiver is a question for a court of competent jurisdiction, not an arbitrator, to decide. The arbitrator may award damages or other relief permitted by applicable substantive law that will not have power to review the enforceability or severability of the paragraph "No Consolidation or Joinder of Parties," below), but the award shall determine the rights and obligations of only the named parties and only with respect to the Claims in arbitration. The rules and procedures of the Administrator, which you may obtain from the Administrator, shall govern the arbitration unless they conflict with this Arbitration Provision, in which case this Arbitration Provision will apply. The arbitration will not be bound by, and this Arbitration Provision shall not be subject to, the federal, state or local rules of procedure and evidence that would apply in any court, or to state or local laws that relate to arbitration proceedings. You or we may have a hearing in arbitration. Any arbitration hearing that you attend in person will take place at a location in the federal judicial district that includes your last-known billing address or at some other place upon which you and we agree. You or we may be represented by counsel. If you or we request, the arbitrator will honor claims of privilege recognized under applicable law and will use best efforts to protect confidential information (including through the use of protective orders). The arbitrator will make any award in writing and, at the timely request of either party, will provide a written statement of reasons for the award.

**Costs.** The party initiating arbitration will pay the initial filing fee. You may seek a waiver of the initial filing fee or any of the Administrator's other fees (collectively, "Administrator's Fees") under any applicable rules of the Administrator. If you seek, but do not qualify for, a waiver, we will consider any written request by you for us to pay or reimburse you for all or part of the Administrator's Fees. We also will pay or reimburse you for all or part of the Administrator's Fees if the arbitrator determines there is good reason for us to do so. We will pay any fees and costs we are required to pay by law. Otherwise, and except as provided in this Agreement, you and we will bear all of our respective fees and costs (including the Administrator's Fees and the fees and costs relating to attorneys, experts and witnesses), regardless of who prevails. Allocation of fees and costs relating to appeals in arbitration will be handled in the same manner.

**No Consolidation or Joinder of Parties.** The arbitration of any Claim must proceed on an individual basis, even if the Claim has been asserted in a court as a class action, private attorney general action or other representative or collective action. Unless all parties consent, neither you nor we may join, consolidate or otherwise bring Claims related to two or more accounts, individuals or accountholders in the same arbitration. Also, unless all parties consent, neither you nor we may pursue a class action, private attorney general action or other representative or collective action in arbitration, nor may you or we pursue such actions in Court if any party has elected arbitration. You will not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim as to which arbitration has been elected.

**Judgment, Enforcement, Finality and Appeal.** The arbitrator's decision will be final and binding after fifteen days unless you or we seek an appeal of the award by making a written request to the Administrator. The appeal panel, which will consist of three arbitrators, will consider all factual and legal issues anew, will conduct the appeal in the same manner as the initial arbitration and will make decisions based on the vote of the majority. The panel's decision will be final and binding. Any final decision of the arbitrator or of the appeal panel is subject to judicial review only as set forth under the FAA. An award in arbitration will be enforceable under the FAA by any court having jurisdiction.

**Miscellaneous, Waiver, Severability, Survival.** If you or we do not elect arbitration or otherwise enforce this Arbitration Provision in connection with any particular Claim, you or we will not waive any rights to require arbitration in connection with that or any other Claim. This Arbitration Provision shall survive: (i) suspension, termination, revocation, closure or changes of this Agreement, your account and your relationship with us; (ii) the bankruptcy or insolvency of any party; and (iii) any transfer of your account, or any amounts owed on your account, to any other person or entity. If any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. In the event of a conflict or inconsistency between this Arbitration Provision and the other provisions of this Agreement or any prior agreement, this Arbitration Provision shall govern. A photocopy or other image of this Agreement and related documents may be used in place of the originals for all purposes including litigation.

© 2005 Capital One Services, Inc. Capital One is a federally registered services mark. All rights reserved.

**CAPITAL ONE BANK (USA), N.A.,**
　　*Plaintiff,*

v.

**DANIEL A TAYLOR**
　　*Defendant(s).*

### AFFIDAVIT

The undersigned, being duly sworn, makes the following oath:

　　1.　　I am over 18 years old and competent to make this affidavit. I am a Litigation Support Representative and an authorized agent of Plaintiff **CAPITAL ONE BANK (USA), N.A.** ("Capital One") for purposes of this affidavit. I am duly authorized to make this affidavit, and because of the scope of my job responsibilities, I am familiar with the manner and method by which Capital One maintains its normal business books and records, including computer records of defaulted accounts.

　　2.　　These books and records are made in the course of regularly conducted business activity (1) at or near the time the events they purport to describe occurred, by a person with knowledge of the acts and events, or (2) by a computer or other similar digital means, which contemporaneously records an event as it occurs. The contents of this affidavit are believed to be true and correct based upon my personal knowledge of the processes by which Capital One maintains its business books and records.

　　3.　　The books and records of Capital One show that Defendant(s) opened an account with Capital One for the purpose of obtaining an extension of credit and did thereafter use or authorize the use of the account for the acquisition of goods, services, or cash advances in accordance with the Customer Agreement governing use of that account. Further, Defendant(s) has/have breached the Agreement by failing to make periodic payments as required thereby.

　　4.　　The books and records of Capital One show that Defendant(s) is/are currently indebted to Capital One on account number **5178057319747007** for the just and true sum of **$5150.53** as of **10/22/2008,** plus interest accruing from said date at an annual percentage rate in accordance with the Customer Agreement, currently **24.90%,** and that all just and lawful offsets, payments, and credits have been allowed. The Customer Agreement entered into between the

1

parties also authorizes Capital One to recover from Defendant(s) reasonable attorneys' fees and costs to the extent permitted by law.

     5.     I declare under the penalty of perjury that the foregoing is true and correct and if called as a witness I would competently testify, under oath, thereto.

Given under my hand on:

Dated: __11/21/2008__

Stephanie Sizemore

County of Chesterfield, to wit:
Commonwealth of Virginia

     SUBSCRIBED and sworn to before me, the undersigned Notary Public in and for the jurisdiction aforesaid, by Stephanie Sizemore, who acknowledged before me his/her signature to the foregoing Affidavit.

     GIVEN under my hand and seal this _21_ day of _Nov_____, 20_08_.

Notary Public

Notary Registration Number: _____
My Commission Expires: ____ / ____ / 20___

ALEKSANDER S. CHERKIS
Notary Public
Commonwealth of Virginia
7178052
My Commission Expires Sep 30, 2012

A006
SHERMETA, ADAMS AND VON ALLMEN

# EXHIBIT - 4

Approved, SCAO

535044/DS    129796    MAC CMB     65/pct

Original - Court    2nd copy - Plaintiff
1st copy - Defendant    3rd copy - Return

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 41A    JUDICIAL DISTRICT | SUMMONS AND COMPLAINT | |
| DISTRICT    JUDICIAL CIRCUIT | | S-09-129796-GC |
| COUNTY PROBATE | | |

**Court address**        40111 DODGE PARK RD. STERLING HEIGHTS, MI 48313      **Court telephone no.**   586-446-2535

Plaintiff's name(s), address(es), and telephone no(s).

CAPITAL ONE BANK (USA), N.A.

v

Defendant's name(s), address(es), and telephone no(s).

DANIEL A TAYLOR

35639 RAINBOW DR
STERLING HEIGHTS, MI 48312

Plaintiff's attorney, bar no., address, and telephone no.

SHERMETA, ADAMS & VON ALLMEN, P.C.
BY: KYLE J. VON ALLMEN (P52776)
P.C. BOX 5016
ROCHESTER HILLS, MI 48308
(248) 519-1700

**SUMMONS**   **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued | This summons expires | Court clerk |
|---|---|---|
| 10-05-09 | 01-04-10 | ROBIN VANSICE/DB |

*This summons is invalid unless served on or before its expiration date.

This document must be sealed by the seal of the court.

**COMPLAINT**   **Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.**

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| SAME AS ABOVE | SAME AS ABOVE |

Place where action arose or business conducted

Date   09/28/2009

Signature of attorney/plaintiff

KYLE J. VON ALLMEN (P52776)
TERRI P. TODD (P55821)
DEBORAH A. BANFILL (P63179)

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (3/08) **SUMMONS AND COMPLAINT**   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

DEFENDANT

STATE OF MICHIGAN
IN THE DISTRICT COURT FOR THE  41A   JUDICIAL DISTRICT


CAPITAL ONE BANK (USA), N.A.

                    Plaintiff,

vs.                                          Case No.

DANIEL A TAYLOR
                    Defendant(s).      /
SHERMETA, ADAMS & VON ALLMEN, P.C.
BY: KYLE J. VON ALLMEN (P52776)
Attorneys for Plaintiff
P.O. Box 5016
Rochester, Michigan  48308
(248) 519-1700                         /

                          COMPLAINT
      NOW COMES the Plaintiff, CAPITAL ONE BANK (USA), N.A.,
 by and through its attorneys,
SHERMETA, ADAMS & VON ALLMEN, P.C., and for its Complaint against
the above named Defendant(s) states to this Honorable Court as
follows:

      1.   Jurisdiction and venue are proper in this Court.

      2.   Defendant(s) entered into a credit card agreement with
Plaintiff on OCTOBER 21, 2003 for a credit card account bearing
account number 5178057319747007.

      3.   Upon information and belief, Defendant(s) has possession
of the agreement upon which this claim is based.

      4.   Defendant(s) agreed to the terms and conditions of the
credit card agreement by making purchases or taking cash advances
on the credit card account.

      5.   Plaintiff has fully complied with the terms and conditions
of the credit card agreement.

      6.   Defendant(s) has defaulted under the terms and conditions
of the credit card agreement by failing to pay as promised.

      7.   There is presently due and owing the sum of $6,344.03.

      WHEREFORE, Plaintiff prays for Judgment in the amount of
$6,344.03 plus costs, interest and attorney fees.

Dated:  SEPTEMBER 28, 2009      SHERMETA, ADAMS & VON ALLMEN, P.C.

535044/Q1

                                BY:
                                   Kyle J. Von Allmen (P52776)
                                   Terri P. Todd (P55821)
                                   Deborah A. Banfill (P63179)

# EXHIBIT - 5

# NOTICE OF DISPUTE
# AND REQUEST FOR VALIDATION

Shermetta, Adams & Von Allmen, P. C..                   NOVEMBER   9, 2009
445 SOUTH LIVERNOIS ROAD SUITE 333
PO BOX 5016
ROCHESTER HILLS, MI 48303-5016

Daniel Taylor
35639 Rainbow drive
Sterling heights, Mi 483 12.

        Re: Capital One Account No.    ***********************7007

Dear:  Shermetta, Adams & Von Allmen, P. C

        This is Actual and Constructive Notice that the collection procedure being used hereafter
against Daniel Taylor is defective. Any legal process hereafter shall constitute violation of the
FDCP Act.  This is not a request that you "VERIFY" wherein you pretend to "VALIDATE"
with a few typed lines on a piece of paper or supplying an Affidavit that has been proven to be
invalid in validating a claim of debt. Any pursuit of this type is frivolous and without merit and
will be introduced as evidence into any action taken against you and your firm. (See. Reference
the law and Fair Debt Collection Practices Act. Assessment Authority.)

        The United State Supreme Court has ruled, *"The claim is not owed until it has been
lawfully assessed."* Therefore, the Claimant is prohibited by law and the Fair Debt Collection
Practices Act from taking any collection action until there is presented to the Debtor a full
disclosure of the assessment including a certified copy of the *Assessment Certificate* document
that pertains specifically Shermetta, Adams & Von Allmen, P. C Title 15 U.S.C. § 1692 (b) states
that a " **Validation of the debt can either be a signed judgment order or an accounting which
is signed and dated by the person responsible for maintaining the account general ledger.**
See Spears v. Brennan, Pacific Concrete F.C.U. V. Kauanoe, 62 Haw. 334, 614 P.2d 936 (1980),
GE Capital Hawaii, Inc. v. Yonenaka 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001), Fooks v.
Norwich Housing Authority 28 Conn. L. Rptr. 371, (Conn. Super.2000), and Town of Brookfield
v. Candlewood Shores Estates, Inc. 513 A.2d 1218, 201 Conn.l (1986). See also Solon v.
Godbole, 163 111. App. 3d 845, 114 111. Dec. 890, 516 N. E.2d 1045 (3Dist. 1987).

Title 15 USC 1692 (a) Notice of debt; contents Within five days after the initial communication
with a consumer in connection with the collection of any debt, a debt collector shall, unless the
following information is contained in the initial communication or the consumer has paid the
debt, send the consumer a written notice containing - (1) the amount of the debt; (2) the name of
the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty
days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt
will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the

debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. (b) Disputed debts If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. (c) **Admission of liability** ***The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.***

Mailed: via certified mail
# 7008  3230  0002  0532  4070

With Explicit Reservation of all Rights,
Without Prejudice 1-207, 1-308.
Signed:
*Daniel Taylor*
Daniel Taylor

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Trmetta, Adams & Von Almen, P.C.
45 South Livernois Rd
333
P. Box 5016
Rochester Hills, Mi.
48308-5016

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Muskita                          11-17-09

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
   (Transfer from service label)   7008 3230 0002 0532 4070

PS Form 3811, February 2004        Domestic Return Receipt

%JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Daniel A. Taylor, in pro per

**(b)** County of Residence of First Listed Plaintiff   Macomb County
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

35639 Rainbow Drive, Sterling Heights, Mi. 48312
Tel. No. (586) 698-2553

## DEFENDANTS

Shermeta, Adams & Von Allmen, P.C.

County of Residence of First Listed Defendant   Oakland County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

901 Tower Drive, Suite 400, Troy, MI. 48098.
Tel. NO. (248) 517-1700

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☒ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Defendants violations arise from Fair Debt Collection Practices Act and 18 U.S.C. § 1961,1962,1341

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____